MERRITT ET AL. ads. DAY ET AL.

1. Payment of interest on a note drawn by a firm, by one of the members, after the dissolution of the firm, but within six years after the maturity of such note, will renew it, as against the statute of limitations.
2. Nor will the fact that one of the firm is a married woman alter the effect of such renewal.

On rule to show cause.

Argued at February Term, 1875, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and KNAPP.

For the defendants, *Winfield.*

For the plaintiffs, *J. F. McGee.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The note in suit was drawn by a firm, one of the members of which was a married woman.

More than six years having elapsed after the maturity of the instrument, and before the bringing of the action, the bar of the statute of limitations was attempted to be removed, by the proof of payment of interest before the expiration of the six years, such payment being made by a single member of the firm, and after the dissolution of the firm. The first legal problem presented by the case, therefore, is whether, under the circumstances stated, a partner can, by his separate act, keep alive this obligation of the copartnership after it has been dissolved.

The principal case applicable to this subject in general, is that of *Whitcomb* v. *Whiting*, decided by Lord Mansfield, and reported in *Douglas, p.* 652. The precise point presented was this : the suit was on a joint and several promissory note, made by four persons, against which the statutory time had run out, but it appearing that one of such makers had, within six years, paid the interest and part of the principal, the question arose whether such act took the case out of the statute, with respect to all four drawers. It was held that the action was well brought, Lord Mansfield, in assigning the ground of judgment, saying : " Payment by one is payment by all, the one acting, virtually, as the agent for the rest ; and, in the same manner, an admission by one is an admission by all, and the law raises the promise to pay when the debt is admitted to be due."

There are few cases recorded in the books which have evoked more discussion, and produced greater contrariety of opinion, than this celebrated adjudication. But the rule which it introduced has retained its standing unshaken, in the English jurisprudence, to the present day, and has been adopted by the majority of the judicial tribunals of this country. It has always been regarded as a part of the law of this state. "Now it is well settled," says the opinion read more than twenty years ago, in the Court of Errors and Appeals, in the case of *Disborough* v. *Bidleman's Heirs,* 1 *Zab.* 679, " under the statute of 21 *Jac.* 1, that a partial payment, made by one of two or more makers of a joint and

several promissory note, will take the case out of the statute, as regards the other makers, in a separate action against any of the others— *Whitcomb* v. *Whiting*, &c. ; a doctrine which has been frequently recognized as settled law in this state. Payment by one is payment for all, the one acting, virtually, as the agent for the rest." I think it unquestionable, that the doctrine thus stated has been received and acted upon for the last thirty or forty years in our legal practice. To this extent, therefore, I must regard the subject under consideration as closed to all discussion.

And this premiss thus established seems, inevitably, to rule the point now considered in this case against the contention of the defendants. Granting that a payment made by one of the makers of a joint note, given by several, is, on the ground of an implied agency, the act of all, it seems a necessary consequence, that the fact that such makers were partners when they issued the paper, can have no modifying effect. The obvious reason is, that the agency in question arises, not out of the incidents of the copartnership, but from the relations created by the joint indebtedness. If partners have ceased to be such by the act of dissolution, and can no longer bind each other in that capacity, they are still joint debtors, and, from that connection, they are the agents of each other in making payments, and renewing the promise to pay, so as to avoid the effect of the statute of limitations. This is the logical result of the adoption of the principle upon which the decision in *Whitcomb* v. *Whiting* is founded ; and, accordingly, it will be found, that such principle is repudiated in all those decisions which hold that one partner, after the dissolution of the copartnership, cannot, in any respect, affect his copartners by a part payment of a joint obligation. To consistently vindicate the theorem that a partner cannot thus extend, with respect to time, the contracts of the expired firm, the establishment of two propositions is absolutely essential : first, that such act does not appertain to the power incident to the settlement of the business of the partnership ; and, second, that from the existence

of the joint indebtedness, a right does not arise, in either of the joint debtors, to arrest, by his sole act, the running of the statute of limitations. In this state, as has been already shown, the reverse of this latter proposition is settled, and the consequence is, that the doctrine of the defence, on the point now considered, has no foundation in law upon which it can be placed. The defendant, who made the payment in the present instance, was not, on account of his former connection with the other defendants in the firm which had been dissolved, empowered as their agent to stop, as against his associates, the running of the statute ; but such payment being made by one of several joint debtors, had such effect by force of the rule of law proceeding from the case of *Whitcomb* v. *Whiting.* Applying the language of that authority, " payment by him was payment for all," he " acting virtually as agent for the rest." And it is in this way that, as between copartners, this principle has been applied by the English courts. In that country, it has been several times decided, and is now the unquestioned rule, that this implied agency arises with respect to payments or acknowledgments made by a partner, after the cessation of the partnership, touching antecedent transactions, so as to take them out of the operation of the statute.

*Wood* v. *Braddick,* 1 *Taunton* 104, was similar, in the feature now under consideration, to the present case. It was an action against partners, who pleaded the statute of limitations, and the bar was adjudged to be removed by an admission contained in a letter written by one member of the firm after its dissolution. This case has been often cited, and seems never to have been questioned by the English courts, and is relied upon as authority by the Chancellor in the case of *Pritchard* v. *Draper,* 1 *Russel & Mylne* 191. This case has, likewise, been expressly adopted, and its doctrine enforced, in Massachusetts. *Cady* v. *Shepherd,* 11 *Pick.* 400 ; *Vinal* v. *Burrill,* 16 *Ib.* 401 ; *Sigourney* v. *Drury,* 14 *Pick.* 387. The same rule has been recognized in several of the other states; in Connecticut, (*Bound* v. *Lathrop,* 4 *Conn.* 336 ;)

in Maine, (*Shepley* v. *Waterhouse*, 22 *Maine* 497 ;) in Vermont, (*Wheelock* v. *Doolittle*, 18 *Vt.* 440.) And in North Carolina and Georgia it was explicitly held that the acknowledgment of the debt by one partner, though after the dissolution of the association, will prevent the operation of the statute. *McIntire* v. *Oliver*, 2 *Hawks* 209 ; *Brewster* v. *Hardman*, *Dudley* 138.

Until quite recently, this was also the settled law of New York. *Smith* v. *Ludlow*, 6 *Johns.* 267 ; *Johnson* v. *Beardslee*, 15 *Johns.* 3 ; *Patterson* v. *Choate*, 7 *Wend.* 441. But the case of *Van Keuren* v. *Parmelee*, 2 *Comst.* 523 ; and *Shoemaker* v. *Benedict*, 1 *Kernan* 176, have taken the opposite view, reversing these earlier decisions.

It seems to me that this reversal of a long series of cases, extending over an extended course of years, cannot but be regarded as anomalous. Originally it may not have been of much consequence whether the rule in question was established the one way or the other ; and probably not much inconvenience would have resulted if it had then been declared that joint debtors were not so far agents with respect to each other as to be competent to renew the debt to the extent that it was affected by the operation of the statute. But, granting this, it certainly is important that the rule, when once established, should be steadfast. The business of life rapidly accommodates itself to any rule that is judicially promulged, the reason being that it is confidently believed that such rule will not be arbitrarily changed, and the highly practical maxim, *stare decisis*, is a recognition of the palpable injustice of disappointing such legitimate expectations. The crisis, therefore, does not often occur which justifies the overthrow, by judicial action, of an inveterate rule of law. After a careful examination of these reversing decisions, I can perceive no reason assigned for the judicial course thus taken, which, in my opinion, places it in harmony with scientific principles as generally understood. Substantially there is, as it seems to me, but a single ground of decision upon which these cases rest ; and that is, that it is inconsistent with correct theory to

infer from the fact of the joint obligation and the unity of interest, the agency to renew the contract as against the force of the statute. Such a proposition is incapable of demonstration. A and B draw a note ; A pays the interest upon it for six years ; each act of payment is such an admission of the existing legal obligation as to justify clearly the inference that a renewed promise is made by A to pay the debt, so as to postpone the period when an action upon it will be barred by the statute. Thus far the law is not, and never has been disputed. But, in *Whitcomb* v. *Whiting*, it was held that, in making these payments of the joint debt, it must be esteemed an inference of the law that A acted for B, as well as for himself. Now here the whole question is, whether it is to be presumed that the payments were made at the request or by the authority of B ; because, if this was so, then, most certainly, the existence of the debt was so recognized by B, that the new promise, by implication, to pay it, follows as a matter of course. Now, why not infer under these circumstances the authority to pay ? B is liable for the money ; it is his duty to pay it ; the payment is for his benefit ; and when A has paid it, the law holds B to a contribution, so that A can sue him for so much money paid and laid out for him at his request. There can be no doubt that this inference is eminently consistent with the ordinary course of affairs, for it is certain that, in the vast majority of instances, these payments made by one of the joint debtors is so made with the knowledge and at the instance of the other. It is not necessary to assert, that this is the better of the two adverse theories on this subject, it being quite sufficient to show that the rule originally established had some basis in principle to rest upon. In the cases in New York it is argued, with force, that the juncture in question affords no ground for this inference of an agency. The case there was this : that, for near half a century, the rule of the English law was settled upon this subject ; that, for nearly the same period of time, it was equally settled in the State of New York ; that the rule was sanctioned by a long line of both

English and American jurists, of the very highest eminence; that there was nothing to show that this rule had resulted in evil, or had been productive even of inconvenience. Under such circumstances, notwithstanding the great respect which I entertain for the eminent tribunal whose two decisions have revolutionized, in the State of New York, this branch of the law, I cannot yield my assent to the propriety of such course. In my opinion, the introduction of the principle of judicial action exemplified in these cases, would do much to shake the confidence now felt in the stability of legal rules. It is enough for me to know that the rule in question has, for many years, been regarded by my predecessors as the settled law of this state; that it rests upon respectable grounds, to say the least of it, and that, in its operation upon the affairs of business, it has not been attended with any serious inconveniences. Under such conditions, I think the rule cannot be abolished, even though it should seem that it is not entirely reconcilable with the highest ideal of a perfect theory of the legal subject to which it appertains.

In the second branch of the argument, urged in behalf of the defence, I can perceive nothing that requires elucidation. The fact that one of the defendants is a married woman cannot affect the result. She was competent to make the original contract, and was equally competent to renew it. The law, under proper circumstances, will as readily raise a promise against her as it would if she were discovert. So she can act through the medium of an agency. If the previous reasoning is correct, and a renewal of the original assumption was properly implied from the facts in proof against the rest of the defendants, it must, on the same grounds, be implied against this married defendant.

Let the rule be discharged.